[Cite as *State v. Greenwalt*, 2012-Ohio-341.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO

        Plaintiff-Appellee

-vs-


DONALD L. GREENWALT

        Defendant-Appellant


| : | JUDGES: |
|---|---|
| : | William B. Hoffman, P.J. |
| : | Sheila G. Farmer, J. |
| : | Julie A. Edwards, J. |
| : | |
| : | Case No. 11CA000011 |
| : | |
| : | |
| : | O P I N I O N |


CHARACTER OF PROCEEDING:         Criminal Appeal from Cambridge
                                       Municipal Court Case No.
                                       11CRB00117

JUDGMENT:                             Affirmed

DATE OF JUDGMENT ENTRY:         January 26, 2012

APPEARANCES:

For Plaintiff-Appellee                     For Defendant-Appellant

WILLIAM H. FERGUSON               MICHAEL GROH
Cambridge Law Director                919 Wheeling Avenue
150 Highland Ave., Ste. 2            Cambridge, Ohio  43725
Cambridge, Ohio  43725

*Edwards, J.*

{¶1} Defendant-appellant, Donald Greenwalt, appeals his conviction and sentence from the Cambridge Municipal Court on one count of theft. Plaintiff-appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2} On February 3, 2011, a complaint was filed charging appellant with theft in violation of R.C. 2913.02(A)(1), a misdemeanor of the first degree. At his arraignment on February 11, 2011, appellant entered a plea of not guilty to the charge.

{¶3} Thereafter, a bench trial commenced on April 25, 2011. The following testimony was adduced at trial.

{¶4} On January 27, 2011, Eric Smith was employed at the Wal-Mart store in Cambridge as an assets protection associate. While working that day, Smith observed appellant and a woman in the electronics department. According to Smith, the two selected a lap top case that came with a free wireless mouse and battery. Smith testified that he saw appellant rip open the packaging and take the mouse out of the package and then go "over to another aisle where he took it the rest of the way out of the package and concealed it in his front pocket." Transcript at 7-8.

{¶5} Smith testified that he picked up the torn packaging and followed appellant as he walked through the store. Smith then confronted appellant as appellant was walking out the door. Appellant put his hands up and started shoving Smith to the side. After Smith grabbed appellant, appellant continued struggling, yelling, screaming and cussing. Once appellant calmed down, Smith "let him up and he spun away and got into

a corner. He actually pulled his fists up like he was going to start to throw punches." Transcript at 9. Appellant, according to Smith, was in the corner by green recycling bins. Once Officer Delaney arrived on the scene, appellant started yelling and cussing again and threatened them.

{¶6} Officer Delaney, during a search of appellant, found a Duracell battery in appellant's pocket. Smith testified that this type of battery was the type that was in the packaging that appellant previously had opened. After viewing the store video, Wal Mart personnel looked around and found the mouse inside the green recycling bin in the corner. Smith testified that at one point, appellant had been right up against the bin. When asked, he testified that he did not see appellant put the mouse into the recycling bin.

{¶7} Store surveillance tapes from Wal-Mart, which were admitted as Exhibit A, did not show appellant putting the mouse into his pocket. Testimony was adduced that the aisle that appellant had been in was not covered by the video.

{¶8} On cross-examination, Smith testified that he did not see appellant throw the mouse in the bin, but that appellant could have dumped the mouse in the bin when he was up against the wall. According to Smith, "I know he was in possession of it and the only two people that could have dropped it in there was either he or I." Transcript at 23. The following testimony was adduced during redirect:

{¶9} "Q. And your testimony was that you never allowed contact with the defendant from the time that he had taken the lap top from the package until you apprehended him, correct?

{¶10} "A. Correct, the mouse had constant surveillance throughout the store.

**{¶11}** "Q. Okay and so when you were in constant surveillance of him did you observe where he put the mouse or what he did with the mouse?

**{¶12}** "A. It was in his right front pocket.

**{¶13}** "Q. Is that his coat or his jeans or what?

**{¶14}** "A. His jeans.

**{¶15}** "Q. Okay. And now, during your struggle, would he have had an arm to use to get into his right front pocket, right, right front pocket?

**{¶16}** "A. Yes. I never had full control of him. There were only, like I said, there was a couple times where he was out of my grip." Transcript at 26.

**{¶17}** At trial, appellant testified that he went to the store on the date in question to compare prices on computers for his mother. After determining that the store did not have the computer that he wanted to price, along with Ashley, his female companion looked at a laptop case that contained a wireless mouse. According to appellant, while looking at the item, he noticed that the box was already opened and the mouse had parts missing and was "useless". Transcript at 55. Appellant testified that he did not take the mouse.

**{¶18}** Appellant testified that he then left the electronics section of the store and went to the grocery department to pick up some sausages. After realizing that he had left his phone in the electronics department, appellant returned there and retrieved the same. Appellant testified that he never put the mouse in his pocket and that "[t]he only thing I can think of is he [Smith] saw me put my phone back in my pocket…" Transcript at 57. He testified that his phone looked like a mouse. According to appellant, after

picking up his phone and determining that he could not get any reception, he started walking out the door to the store and was accosted by Smith.

{¶19} Ashley Hammel testified that appellant was her boyfriend and that the two went to Wal Mart on January 27, 2011 to price computers for appellant's mother. She testified that the box containing the mouse was partially opened and that the mouse was missing parts.

{¶20} At the conclusion of the evidence, the trial court found appellant guilty of theft. As memorialized in a Journal Entry filed on April 25, 2011, the trial court sentenced appellant to 45 days in jail with 40 of the days suspended. The trial court also placed appellant on unsupervised probation for a period of 12 months.

{¶21} Appellant now raises the following assignments of error on appeal

{¶22} "I. THE DECISION OF THE TRIAL COURT CONVICTING APPELLANT OF THEFT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶23} "II. THE DECISION OF THE TRIAL COURT CONVICTING APPELLANT OF THEFT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I, II

{¶24} Appellant, in his two assignments of error, argues that his conviction for theft of the wireless mouse is against the manifest weight and sufficiency of the evidence. We disagree.

{¶25} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. See *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541, (1997), *State v. Jenks,* 61 Ohio

St.3d 259, 273, 574 N.E.2d 492 (1991). The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jenks,* supra.

**{¶26}** On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." *Thompkins,* supra at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212, (1967), syllabus 1.

**{¶27}** Appellant was convicted of one count of theft in violation of R.C. 2913.02(A)(1). R.C. 2913.02 states, in relevant part, as follows: "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:(1) Without the consent of the owner or person authorized to give consent;…"

**{¶28}** Appellant now argues that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence because there was no evidence that he was in possession of the mouse when he left the store, because the

mouse was not found on his person and because there was no testimony that appellant threw the mouse into the recycling bin. Appellant also contends that his conviction is against the manifest weight of the evidence because there was no proof that the battery found on appellant's person was the battery that came from the mouse packaging.

{¶29} Upon our review of the record, we find that, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense of theft beyond a reasonable doubt. We further find that the trial court did not lose its way in convicting appellant. As is stated above, Eric Smith testified that he saw appellant rip open the package, remove the mouse from the same and conceal the mouse in his front pocket after going over to another aisle. He further testified that he had constant surveillance of appellant from that time until he confronted appellant leaving the store. While Smith did not see appellant throw the mouse into the recycling bin, he testified that he never had full control of appellant and that appellant was out of his grip a couple of times. The mouse was located in a recycling bin in a corner near where appellant had been. Testimony also was adduced that a Duracell battery was found on appellant's person and that this type of battery was the type that was in the packaging that appellant previously had opened.

{¶30} Based on the foregoing, we find that appellant's conviction for theft was not against the manifest weight or sufficiency of the evidence.

**{¶31}** Appellant's two assignments of error are, therefore, overruled.

**{¶32}** Accordingly, the judgment of the Cambridge Municipal Court is affirmed.


By: Edwards, J.

Hoffman, P.J. and

Farmer J. concur

_____

_____

_____

JUDGES

JAE/d1117

IN THE COURT OF APPEALS FOR GUERNSEY COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO      :
            :
    Plaintiff-Appellee :
            :
            :
-vs-          :   JUDGMENT ENTRY
            :
DONALD L. GREENWALT   :
            :
    Defendant-Appellant :   CASE NO. 11CA000011

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Cambridge Municipal Court is affirmed. Costs assessed to appellant.

_____

_____

_____

         JUDGES